The next case on calendar for argument, same parties, same council, United States v. Paniagua-Paniagua. And we probably can repeat the same arguments, right? Well, I hope not, Your Honor. If we do get past the Court's concerns that Duenas-Alvarez wouldn't allow us to look at accomplice liability, what we have different in this case is where the individual wasn't deportable as charged, this is an issue of whether he should have received voluntary, excuse me, whether the Court should have informed him that he may be eligible for voluntary departure. On this case, did he plead separately? It's the same situation as Mr. Valdivia. He pled to just the possession. It was an Alfred plea, but it wasn't an accomplice liability section attached to his plea agreement. Is that accurate? It's right. And maybe I'll just move forward in the argument to the government argues that if we get to the modified categorical approach, if we want to see, peek at the documents underlying his conviction to see whether he was convicted as a principal or whether he was convicted as an aider and abetter, that the government believes it shows that he indeed possessed the drugs with the intent to deliver. When we look at the conviction documents in this case, and this is excerpt of record page 182, the government cites to the part of that record that says Mr. Paniagua said that the Court could consider the police reports in support of his plea. The reason why he checked that box is because he also checked the next box, which says, quote, I do not believe I am guilty. However, I wish to plead guilty in order to take advantage of the State's plea offer. So what difference does that make? If he said that the police reports could be consulted, what difference does it make why he said that? Well, here is a case where we don't know whether he's pleading guilty because the State could prove that he's an accomplice or whether it could prove that he possessed the drugs. When we look at the police reports, if we really want to get into this, we're going to see why the Supreme Court 26 years ago in Taylor said we are not going to engage in factual analysis. We're going to look solely at the statute of conditions. Well, there are a limited set of documents that we may consult. What are they? I said there are a limited number of documents we may consult. Right. Police reports are one of them if the defendant agrees to that. Well, they were at the time or they may have been at some time prior to the Supreme Court's most recent clarifications of what it meant in Taylor. But I only mentioned those reports to show how unclear it can be about what the culpability is of an individual. He didn't possess the drugs on this person. He told the officers that he had bought the car two days before. They found the drugs secreted in a compartment behind the radio bracket inside a closed container. There's nothing to suggest anything other than he possessed a car that contained those drugs. If he knew those drugs were in there, if he was taking that car back to its owner because he said, I left my drugs in there, under Washington law, he'd be guilty of this substantive crime of possession with intent to deliver, even though he didn't actually possess it and he didn't have the intent for that drug to be possessed with the intent to deliver. Mr. Johnson, I want to ask you, are you relying on the modified or the categorical? Well, that's a difficult question because we, according to the government, we have to look at the law at the time of Mr. Paniagua's deportation, which was February 2008. Do you disagree with that? With what? Whether or not what law we look to. Do we look to the law that was in effect at the time of his deportation? Well, I only disagree in the matter of degree. The government takes an aggressive reading of Vidal Mendoza to suggest that even clarifications in the law must be ignored when we are sorry, when the court, the district court here in a legal reentry case, looks at the statute of conviction. But counsel, I'm still waiting for an answer to my question. Is it your position that we should apply the modified or the categorical? At the time, we have to apply the law at the time of his deportation. Okay. The controlling authority at the time of his deportation was the en banc decision Navarro-Lopez. Which is? Which is, sorry? Categorical. Well, yes. It says that, and it's probably the case that's most true to the Supreme Court's reiterations of Taylor, now in the scamps in Mathis. And in that case, it said if the offense is missing an element, we go no further. The modified categorical is not available. The government cites to the subsequent decision decided, I believe, about three years after Mr. Paniagua's deportation, Aguilamontes de Oca, the one that the Supreme Court said was a true deviation from what the court had meant all along in Taylor and Shepard. Well, counsel, let me follow up with just one more question. It seems to me that if the modified approach is your position, I wonder whether you haven't waived that by failing to raise it in the opening brief. But if it's the categorical, I wonder whether that isn't available because you didn't raise accomplice liability in the opening brief. Am I wrong? Well, I guess we have to look at what was argued below. It was argued below that the Washington State statute was overbroad because its accomplice liability was overbroad, essentially missing the element of intent. That was the argument made. The response by the government below was that it's not overbroad. So I don't know that I've waived anything by arguing that this accomplice liability is overbroad. It's for the first time on appeal that the government is now arguing Vidal-Mendoza. That was never raised. But were in your brief to us, did you let us know that that was an issue, the accomplice liability issue? Were in your opening brief to the Court of Appeals were we put on notice that this was an issue for you? It's practically the entire brief. I'll try to pull up pages here. Page 12, you say, aiding and abetting liability. Page 10 in the summary of argument, whether or not conviction is a principle under RCW 69-5401 would constitute a drug trafficking offense. Washington State is codified. The statement of argument isn't where we look. Generally, we look for the discussion part of it. I'm just saying that's the first part of the brief I come to. There's a significant part of the brief dedicated to this. Well, it's not a significant part if you're just stating the issue. We look for the argument with case authority and discussion of it. So I think that's what Judge O'Scanlan was asking you about in terms of the brief, where the cases are and the analysis. It's all there, Your Honor. This is the entirety of the brief is that Washington aiding and abetting is overbroad. Where are the Washington cases cited that you rely upon in your aiding and abetting argument in this case? Well, let me get to the table of authorities. I mean, I'm happy to. Well, I'll sit down and get to the part of the brief that discusses this. But this is no different than the brief that was filed in Mr. Each brief stands on its own. You can't incorporate your arguments from a different brief into a separate argument. Each brief is bred and considered on its own merits. That's correct, Your Honor. And as I'm running out of time, I'll sit down and find the pages, particular pages of this brief where we discuss this issue. But there's no doubt that the reason why Mr. Paniagua can argue that his deportation is invalid is because he is arguing that his conviction was not an aggravated felony. The only reason he's arguing his conviction is not an aggravated felony is because it's overbroad. And overbroad specifically because it includes an aiding and abetting that is not shared by almost any jurisdiction in the country and is not consistent with Well, on page 17, I thought you said we use the categorical analysis of the drug trafficking offense to determine whether or not it's an aggravated felony, not that there is an aiding and abetting component to it. You just discussed 401 there. Well, it's certainly not my argument that we are only looking at the drug trafficking offense. When I say that you cannot look solely at the drug trafficking offense, the government suggests that because the court found, as Your Honor said recently, held that this particular drug trafficking offense is an aggravated felony, it's not overbroad. The question is whether it is overbroad because it's aiding and abetting. I'm looking at your brief right now. You seem to be discussing the 401 section. And then we go into the elements of the aiding and abetting liability, the intent element, and then there's the footnote with all of the cases regarding intent. Then you go through the mens rea of knowledge and the model penal code and the Washington law. It appears to me that, and I guess when the government gets up, are we starting with the basis that everyone's agreeing that 401 is also the liability statute? And that's why we're not, I think that's why on my section why I'm confused because it seems that we're discussing the liability statute under the 401 section. The criminal liability is defined under the accomplice statute as being the same as the principle, which is 401. And is that when you get to your argument about the aiding and abetting elements and the mens rea requirement and then you cite to the cases regarding Washington law? Is that how you're proceeding with your argument? Yes. We have to look at the Washington statute under both the government and my reading of Duenas-Alvarez. That includes inherently accomplice liability. And then I have argued in this brief, as I did in the other case, that the accomplice liability is overbroad. And because the accomplice liability is overbroad, because it's indivisible, Mr. Paniagua's conviction cannot be sustained as an aggravated felony. It's a little confusing because you start with 401. And if it's not overbroad when you look at 401, then you're done. But you're not done. And I guess this goes back to the court's original concerns about whether we can even look at accomplice liability. The government and I agree. You need to look at accomplice liability because it is indivisible. It's not as Judge Bonita said, separate elements. It's different means of committing a crime. So we both agree we have to look at accomplice liability. And that was the arguments in Mr. Paniagua's case. Okay. You don't have to tell us where it is in your brief. I'll look for it. Now you've got me concerned. Well, I'm using my iPad now. Your time is over. You've exceeded. It's in the red. But we'll give you a minute for rebuttal. Thank you, Your Honor. I appreciate that. Can you tell us something new? Yes, Your Honor. Addressing what I think was Judge O'Scanlan's question about whether there was a preservation of the argument that under the modified categorical approach, the documents are not adequate. ER 105 is a citation to the excerpts of record from the hearing on the motion where the court, district court below, asked the defense attorney, you agree if we did go to the modified categorical approach, there's really not an issue in this particular case. And the defense attorney said, I haven't raised it. He went further to say, you know, I don't want to get in trouble from my appellate section by waiving something, but he didn't affirmatively argue that the documents were inadequate under the modified categorical approach to show that the defendant had been convicted as a principal. And the law, pertinent law at this time, would we go to the modified categorical approach? No. So there's two ways to look at it. So in 2008, at the time that Mr. Paniagua was deported, there was case law that found that 69.50.401 under the revised code under the state of Washington was categorically a drug trafficking offense. That was the prevailing state of the law, the applicable law at the time in 2008, which under Vidal-Mendoza answers the question. So the cases that established that were United States v. Ibarra-Galindo that was cited in our brief. U.S. v. Luna Camacho is another case where this court said that the Washington State drug trafficking offenses are categorical matches to the aggravated felony illicit trafficking offenses. That's at 45 Fed Appendix 583, and that was decided in 2002. And there this court said Luna Camacho's contention that the Washington State Statute 69.50.401, the one at issue here, that it's not an aggravated felony is foreclosed by our decision in Ibarra-Galindo. But what about the fact that Duane S. Alvarez was decided in 2007? Well, and so at the time that the immigration judge decided the deportation of Mr. Paniagua, what was controlling law was that this statute, 401, was a drug trafficking offense within the meaning of the immigration act. But that time you said there was a law that was in effect in 2008. Yes, Your Honor. But in 2007, Duane S. Alvarez was decided. So why wouldn't Duane S. Alvarez be considered in 2008 in determining whether or not that there was an aggravated felony? And no one had raised that at the time. The challenge to Washington's accomplice liability statute is something of recent vintage. At the time in 2008, there was no question that individuals convicted under 401 were aggravated felons. But didn't Duane S. raise that question by discussing the liability, accomplice liability, but just in regards to a different statute? And even if you take the Duane S. Alvarez framework and look at Washington State's liability, accomplice liability statute, the case law at the time in the Ninth Circuit allowed this court to examine the documents to determine whether the defendant was convicted as a principal or as an accomplice. And as this court has uniformly recognized, those documents here do establish that he was convicted as a principal. There's no other individual identified in the facts of the police report at all. And Mr. Johnson has suggested that Navarro-Lopez v. Gonzalez back in 2007, that the en banc decision somehow was sort of a presage for what would happen in Mathis and de Camp. That's just not true. So United States v. Grissel in 2007, that's at 488 F. 3rd. 844, was another en banc decision by this court where the court looked to the modified categorical approach when there were separate disjunctive statutory phrases. So it didn't require elements. As long as there were disjunctively worded phrases, you could go to the modified categorical approach. And so in this instance, you have two disjunctively phrased sort of liability. You have principal liability or aiding and abetting accomplice liability. In 2008, you could look at the documents to determine whether the defendant was convicted as a principal. And then you wouldn't go to the modified categorical approach. And under the modified categorical approach as it stood back then, whether accomplice liability and principal liability were separate elements was irrelevant. Navarro-Lopez v. Gonzalez created a separate rule when there was a missing element altogether. So this court en banc in Navarro-Lopez said you can't look under the modified categorical approach when there's a totally missing element. But that's not what's at issue here. There's not a missing element. We still have principal liability, which Mr. Johnston has all but conceded is an aggravated felony. Let me ask you, why are we looking back to 2008 for the case law that applied at the time? When it's my understanding that if the immigration judge is advising or advising the person, the defendant, of potential relief, then that's when the relief that applies at the time would be relevant versus what the law is. Because the judge always has the duty to do the analysis of the law, to figure out whether it's an aggravated felony or not, whether the person's deported. It's a legal analysis versus discretionary relief is my understanding. But the discretionary relief in this case hinges on the legal determination of whether the defendant was an aggravated felon or not. So Vidal-Mendoza says an immigration judge is required to advise a deportee of any right to relief that existed at the time of the deportation. That's separate from the Aguilera-Rios formulation of whether the defendant was deportable at all. This is about the right to relief from deportation. That's the issue here. The defendant contends he was not advised of his right to pre-conclusion voluntary departure. So under Vidal-Mendoza, you do look at the law at the time of the deportation in 2008. And what that law squarely held was, one, that the 401 offense was an illicit trafficking offense. So we can stop the inquiry there. But even if the court were to conduct the Duenas-Alvarez analysis, the case law at the time allowed this court to look at the documents regardless of whether it was a statutory alternative or an element. So Judge Rawlinson, the framework that Judge Benitez created in Gonzales-Altamirano that you alluded to is precisely the one in 2008 that would have applied. And because the documents conclusively established that the defendant was convicted as a principal, the inquiry ends. And because the defendant was an aggravated felon in 2008, he was not eligible for pre-conclusion voluntary departure, which means that there were no fundamental defects in his deportation proceeding. So in your view, there wouldn't be any distinction between means of creating, means of accomplishing a crime as opposed to elements? That's correct. Back in 2008, Mathis-DeCamp-Rendon was not the law of the circuit. What Grissel, Suazo-Perez, Aguilar-Montes de Oca all established is at the time, this court simply looked to whether there were disjunctively phrased means, if there were statutory alternatives. The court didn't conduct the subsequent analysis that this court adopted in Rendon. What's your position regarding whether or not under the categorical approach in 2008 the statute was an aggravated felony? In 2008, I think Abaro-Galindo and Luna Camacho, the cases that found 401 to be categorically illicit trafficking offenses, answers the question. So you're just saying this as an alternative argument. If we aren't persuaded that it was categorically, then your backup argument is that under the modified categorical approach, he was convicted as a principal after we look at the documents as permitted in the modified categorical. Yes, Your Honor. Under both scenarios, whether you look at only the principal liability or accomplice liability, we prevail because the law in 2008 found that the defendant was an aggravated felon. So counsel, why is this different than Valdivia? It's different because here it's about relief from deportation. So Vidal-Mendoza and Aguilera-Rios, under this court's law, requires the court to conduct sort of a bifurcated retroactivity analysis. If the question is about relief from deportation, so in Paniagua's case, the question is whether the defendant should have been advised of his right to pre-conclusion voluntary departure. In that instance, you look at the law at the time of the deportation. If it's about removability at all, Aguilera-Rios says that you look at the case law as it is today would be retroactively applicable to the time of the deportation. So in Mr. Valdivia's case, because it was an administrative removal that hinged on his aggravated felony status, it's not about relief from deportation, it's about his removability at all. But there is a separate bar in Valdivia, like the bar here, where the court doesn't even have to reach the question of whether Washington State statute is overbroad, because in Valdivia we made the argument that the defendant had not shown that he was improperly deprived of an opportunity for judicial review. Counsel, is it your position in this case that the issue was not raised in the district court, that this issue regarding the accomplice was not raised in district court? No, the accomplice liability issue was raised before the district court. The question of whether the documents satisfied the modified categorical approach in 2008 was not raised by either party. But as I noted at ER 105, that's where the defense attorney said that he had not raised and agreed that he had not raised that the modified categorical approach would not be met with the documents. Okay. I see I'm out of time. Unless the court has any other questions, the United States would submit. It appears not. Thank you, counsel. Thank you, Your Honor. One minute for rebuttal. Thank you, Your Honor. The accomplice liability was raised below. She admitted that. Okay, thank you. In 2000, it was true that the Ninth Circuit had held that this Washington drug statute was an aggravated felony, was not overbroad. It's also true that in 2007, the Supreme Court in Duenas-Alvarez, prior to this deportation, said that courts must consider accomplice liability. But did that, because it was applied to the death statute, does that, I mean, was that really, were the courts on notice about applying it to other statutes? I don't know. Well, the government and I believe that it was. In 2007, this court decided on Bonnevarra-Lopez. It says you do not get to the modified categorical approach if there is a missing element. Since we have to consider accomplice liability, and because Washington's accomplice liability is missing the intent element that every other jurisdiction except for five others has, then you cannot go to the modified categorical approach. The government says it's not a missing element case. It's a disjunctive statute with alternatives, and that makes a difference. You disagree? Well, I do. I don't think you can look to any documents if there is a missing element under Bonnevarra-Lopez. Again, we have to – The question becomes, is there a missing element, or is there an overbroad element? I'll be honest. The difficulty is we have to go back in time under Vidal-Mendoza to try to do this. When we know today clearly the game would end long before we got to the modified categorical approach. And as I argued in my brief, what the Supreme Court said in Descamps and now in Mathis is not new law. It's not a sharp departure. It is a restatement of what was said in Taylor and Shepard. Why do you think we have to go back to the 2008 when we're doing an analysis of whether the person is going to be deported? And it's a legal analysis. I mean, I think it was the Camacho-Lopez case says you go back to – that's such a fundamental analysis that has to be done by the judge. It's a duty. You can't – it's retroactive. And we do that all the time where the law changes. You go back to applying it retroactively when it's something as substantive as removing a person or deporting a person versus giving someone the opportunity or the notice for some sort of relief. That's what I'm having trouble with. And I don't want to do the government's work for them. They certainly have agreed with me on a number of things here. But under Vidal-Mendoza, because of the posture of this case, because the duty of the judge was to fairly review the record and – let me just get the language. So we're looking at the law as it existed, because that's the only thing the immigration judge could have been able to advise about was the law that existed. The immigration judge didn't have an obligation to look into the future and see what the law might be next year or five years from now. So we're looking – we're taking a snapshot of the time when the immigration judge was giving the advisals to see what the law was at that time, because it wouldn't be appropriate to hold the immigration judge to knowledge of law that did not yet exist. In this case, Mr. Pantiaguas, you are absolutely correct, Judge Rawlinson. And Mr. Valdivias, for other reasons, no. So, yes, Lopez Velasquez-Ambank says we have to look at the law at the time. Vidal-Mendoza says we do, too. But what it specifically says is we don't expect the immigration judges to be clairvoyant, to anticipate sharp changes in the law. Discamps, which I rely on, Rendon, which I rely on, are not sharp changes in the law. They very candidly – Judges who have to implement those, I don't know if I agree with that. But your time is up. Could you wrap up? Thank you. I thought they were trying to make it easier on you folks. But I will wrap up by saying that at the time, the modified categorical approach did not apply. If it did, there's been no waiver of an argument. The government, for the first time in their reply, argues that those documents would satisfy showing as a principle. Look closely at those documents. They do not. The standard is clear and convincing. Thank you. Thank you to both counsel for your helpful arguments. The cases just argued are submitted for decision by the court.
judges: O'scannlain, Rawlinson, Marquez